**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **MARIA BIRO** | : | **CASE NO.: 1:21-cv-483** |
| | : | |
| Plaintiff, | : | **U.S. District Judge Timothy S. Black** |
| | : | |
| v. | : | |
| | : | |
| **DILLARDS, et al.** | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO DISMISS CIVIL ACTION**

Defendant Higbee West Main, LP dba Dillard's submits the following Reply Memorandum in support of its Motion to Compel Arbitration and to Dismiss Civil Action [Doc.#8] and in response to Plaintiff's Opposition to the same [Doc.#12, "Pl.Opp"]. All four factors favoring arbitrability have been established beyond dispute, and neither Plaintiff's Opposition nor her accompanying Affidavit are sufficient to support her contention that the Agreement to Arbitrate Legal Claims is procedurally or substantively unconscionable. Accordingly, all Plaintiff's claims must be referred to Arbitration and the instant civil action must be dismissed, subject to refiling if necessary following the completion of the arbitration process.

I.  **INTRODUCTION**

Plaintiff's Opposition goes to great lengths to depict this routine employment form as some nefarious attempt to manipulate an unwitting and helpless "unsophisticated immigrant." Pl.Opp 6. Her Opposition consists mainly of hyperbole, overdramatization, and a number of conclusory allegations unsupported by any factual detail, let alone evidentiary materials or legal authority. While that makes for entertaining reading, her contentions are completely contrary to governing

Sixth Circuit case law, and she ultimately fails to meet her burden to show that this routine, fair, and mutual Agreement to Arbitrate Legal Claims is somehow unconscionable. Despite Plaintiff's unsupported arguments, the Agreement should be enforced consistent with the Federal Arbitration Act and the long-standing federal policy in favor of arbitration. *Seawright v. Am. Gen. Fin. Ins.*, 507 F.3d 967, 979 (6th Cir. 2007).

## II.  ARGUMENT

In resolving a Motion to Compel Arbitration, the Court considers four factors: (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and (4) if the Court concludes that some, but not all of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Great American Ins. v. Gemma Power Syst.,* no.1:18-CV-213, 2018 U.S.Dist.LEXIS 194987, *9 (S.D. Ohio 2018). None of these four factors is disputed in this matter. Plaintiff does not dispute that she signed the Agreement to Arbitrate, or that her employment claims fall within its scope. Similarly, Plaintiff does not contend that any of her claims are non-arbitrable under federal law,[1] or that some but not all of her claims are subject to arbitration. Pl.Opp. 4.

Granting Dillard's Motion to refer this matter to arbitration is consistent with the "strong federal policy in favor of arbitration, and resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N.Am. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007); *Watson Wyatt v. SBC Holdings*, 513 F.3d 646, 649 (6th Cir. 2008) (The FAA manifests a liberal federal policy favoring arbitration agreements). The Federal Arbitration Act ("FAA") applies in the employment

---

[1] Nor could she make that argument in light of the well-settled federal case law to the contrary. See, Dillard's Motion to Compel Arbitration, Doc.#8, section IV.A. PID 68.

setting and agreements to arbitrate employment-related claims are lawful and routinely enforced. *Walker v. Ryan's Family Steak Houses*, 400 F.3d 370, 376-77 (6th Cir. 2005) (The Sixth Circuit has repeatedly applied the FAA to arbitration agreements formed in the employment setting); *Jones v. U-Haul*, 16 F.Supp.3d 922, 929 & 938 (S.D. Ohio 2014) (In an employment-at-will situation, assent to the terms of an otherwise enforceable arbitration agreement as a condition of continued employment is an acceptable and legally enforceable requirement), citing, *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20 (1991).

Nevertheless, Plaintiff instead asks the Court to excuse her obligation to comply with the Agreement to Arbitrate based upon the unsupported contention that it is procedurally and substantively unconscionable. Since the four factors above clearly weigh in favor of enforcing this Agreement, *Plaintiff* bears the burden of establishing the contractual defense of unconscionability. *Madhat v. Lipsey Communs.*, no.5:20cv764, 2020 U.S.Dist.LEXIS 161272, *12 (N.D. Ohio 2020), citing, *Robinson v. Mayfield Auto*, 2017-Ohio-8739, 100 N.E.3d 978, 984 (Ct.App. 2017).

In Ohio, unconscionability is a ground for the revocation of a contract. For an arbitration agreement to be rendered invalid for unconscionability, it must be both procedurally and substantively unconscionable. *Madhat*, 2020 U.S.Dist.LEXIS 161272, *12, citing, *Schaefer v. Jim Brown*, 2015-Ohio-1994, 33 N.E.3d 96, 99 (Ct.App. 2015). As the party claiming unconscionability, Plaintiff must show that the Agreement at issue is **both** *procedurally and substantively unconscionable*. *Robinson*, 100 N.E.3d at 984. Plaintiff has not met her burden.

### A. Plaintiff has Failed to Demonstrate the Agreement To Arbitrate is Procedurally Unconscionable

Procedural unconscionability concerns the *formation* of the contract, and exists where the circumstances surrounding the formation of the Agreement were such that no voluntary meeting

of the minds was possible. *Madhat,* 2020 U.S.Dist.LEXIS 161272, *12-13, citing, *Schaefer*, 33 N.E.3d at 100. Plaintiff cannot satisfy this standard.

Plaintiff does not generally dispute the circumstances surrounding her execution of the Agreement to Arbitrate. Her handwritten and electronic signatures legally establish her consent to that Agreement and her intent to be bound by it. Dorsey Aff. Tab 1, Doc. #9 PID 77 & 86; *Jones,* 16 F.Supp.3d at 933 (An employee's signature on an arbitration agreement objectively evidences an intent to be bound by its terms, including the requirement that the employee submit to final and binding arbitration any employment-related claims it may have against the employer); R.C.§1306.06 (electronic signatures are likewise binding under Ohio law). Neither Plaintiff's Opposition nor her Affidavit dispute that she actually *signed* the Agreement; she does not contest her handwritten or electronic signatures, or contend that they were forged or falsified.

> 1. *The Agreement To Arbitrate Clearly Sets Forth Its Terms, and Plaintiff's Alleged Inability to Understand that Document is Contrary to the Evidence*

Plaintiff initially contends that the Agreement is procedurally unconscionable because "nowhere in Defendant's agreement is there any reference to any of the rights she would be giving up." Pl.Opp. at 6. That contention could not be further from the truth, as the Agreement expressly refers to her rights to a *jury trial* and *litigation*. At the top of the Agreement, the document prominently states in capitalized, bolded, italicized, and underlined lettering the following:

***IMPORTANT NOTICE: THIS AGREEMENT WAIVES YOUR RIGHT TO A JURY TRIAL AND TO PURSUE LITIGATION IN COURT. READ IT CAREFULLY BEFORE SIGNING.***

Dorsey Aff., Tab 1 Doc.#9, PID 77.

It is hard to imagine how this could have been communicated more clearly or displayed more prominently. Even presuming Plaintiff did not understand the significance of arbitration, this

4

reference to jury trials specifically alerted her to this issue, and at a minimum, gave her the opportunity to inquire further to learn more if she cared to do so.

Despite this simple and clear notice, Plaintiff nevertheless contends that she did not appreciate the implications of the Agreement based upon her limited ability to understand written English.[2] Plaintiff attempts to give the Court the misimpression that she is practically illiterate and must have documents read to her by others. Affidavit of Plaintiff Doc.#12-1 PID 101-02, ¶¶6 & 16. That contention is contrary to her own allegations and the evidence before the Court.

Tellingly, nowhere does Plaintiff contend that she ***cannot*** read English, she simply contends she does "not read English *well*." Pl.Aff. Doc.#12-1 PID 101, ¶6 (emphasis added). Paragraph 4 of her Affidavit notes that she completed the process to become a naturalized U.S. citizen, which requires passing a *written* examination demonstrating a basic ability to *read* English.[3] Plaintiff's personnel file materials also reflect that she had a valid Ohio driver's license, the written examination for which is available in Arabic, Chinese, *English*, French, Japanese, Russian, Somali, and Spanish, but *not* Hungarian.[4]

Plaintiff's Complaint in this matter repeatedly contends that she was a "top sales associate" during her tenure at Dillard's. Doc.#3, ¶¶15&27. Her Complaint details that her sales duties required her to personally complete purchases, credit card transactions, gift card transactions, refunds, exchanges, and returns. Doc.#3, ¶¶17, 18, 35, & 50. Not surprisingly, Plaintiff has presented no evidence to suggest that when she conducted those transactions on the point-of-sale

---

[2] In this regard, it is important to note what Plaintiff's Opposition materials say, and what they do not. Plaintiff contends that English is her second language and that she *speaks* English with a foreign *accent*. Pl.Opp. 5-6. But neither of those details would preclude her reasonable opportunity to read or understand this Agreement.

[3] https://www.uscis.gov/citizenship/learn-about-citizenship/the-naturalization-interview-and-test Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of facts which are not subject to reasonable dispute and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Toth v. Grand Trunk RR*, 306 F.3d 335, 349 (6th Cir. 2002).

[4] https://bmv.ohio.gov/dl-gdl.aspx In addition to the written examination, license applicants also must be able to understand directions and read traffic signs printed in English. *Id.*

computer terminals at Dillard's Kenwood Mall location, the information was displayed in Hungarian, rather than English.

Plaintiff similarly contends that her "husband reads all important legal and business documents" for her. Pl.Aff. Doc.#12-1 PID 101, ¶6. However, Plaintiff had the option – before and after she signed the Agreement – to *print* the Agreement and the accompanying Rules of Arbitration for review by her husband, an attorney, or anyone else she cared to consult, if she had questions about their meaning or legal implications. Dorsey Aff. Doc.#9 PID 73, ¶¶6&10.

Plaintiff's Opposition materials do not indicate that she ever printed that document, or asked a co-worker to do so if she was unable to, or that she ever asked her husband or anyone else to review that Agreement. Plaintiff similarly has produced no evidence of any undue influence or duress. She does not contend that she was required to sign the Agreement within any accelerated or unreasonable timeframe, or that Dillard's ever denied the time or the opportunity to review that document on her own, with her husband, or with legal counsel.

> 2. *Plaintiff's Vague Contention of Unequal Bargaining Power is Insufficient to Invalidate the Agreement*

Plaintiff's Opposition weakly suggests that she was subject to some unlawful disadvantage due to "inferior bargaining power," but she fails to demonstrate what impact, if any, that alleged imbalance had on the instant Agreement. Pl.Opp. 3&8. Ohio law is clear that "generalized grievances related to the Agreement – such as employer superior knowledge … – would work to invalidate nearly all employment-related arbitration agreements. Such a result runs contrary to Ohio's general presumption in favor of enforcing arbitration agreements." *Madhat*, 2020 U.S.Dist.LEXIS 161272 at *14, citing *Sikes v. Ganley Pontiac Honda*, no.82889, 2004-Ohio-155, 2004 WL 67224, at *2 (Ct. App. 2004); *Gilmer*, 500 U.S. at 32 ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable

in the employment context"). At least one other federal court has rejected a similar unsupported contention of unconscionability based upon alleged "unequal bargaining power" involving another Dillard's defendant specifically. *Dooley v. Dillard's, Inc.*, no.2:20cv2086 (W.D. AR July 1, 2020) ("Though Dillard's is a large retail store with significant resources, the scale of its operations alone does not create a situation where the contracts with its employees … are invalid).[5]

When considering the relative bargaining positions of the parties, it is not enough that the parties have some unequal bargaining power, "a vast disparity is required." *Madhat*, 2020 U.S.Dist.LEXIS 161272 at *13, citing *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017-18 (6th Cir. 2005). The crucial question is whether each party to the contract had a *reasonable opportunity to understand its terms*. *Morrison v. Circuit City Stores*, 317 F.3d 646, 666 (6th Cir. 2003). Despite any alleged imbalanced bargaining power, Plaintiff nevertheless had a reasonable opportunity to understand the clear terms of this Agreement.

### 3. Dillard's Had No Legal Obligation to Explain the Agreement to Plaintiff

Plaintiff also repeatedly contends that the Agreement is procedurally unconscionable because Dillard's did not *explain* it to her.[6] Pl.Opp. 3, 6, & 9. She boldly insists Dillard's "*should* have printed the rules, … explained them to her, then imposed a mandatory review period." Pl.Opp. 6 (emphasis added). Notably, she cites no legal authority whatsoever in support of these contentions, or to establish that Dillard's failure to take any of these extraordinary steps renders the Agreement unconscionable or unenforceable. This is not surprising, as Ohio and Sixth Circuit law is squarely to the contrary.

---

[5] A copy of the *Dooley* Opinion and Order [Doc.#14 in that case] is attached as **Exhibit A** for the Court's reference.
[6] Plaintiff similarly does not contend that she *asked* anyone at Dillard's any questions about the Agreement, or that Dillard's ignored or refused to answer any such questions. Having failed to take any steps whatsoever to seek further explanation about this Agreement, she should not now be heard to complain that Dillard's did not spoon-feed this information to her.

"A party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms." *Madhat*, 2020 U.S.Dist.LEXIS 161272 at *10-11, citing *Melia v. OfficeMax*, no.87249, 2006-Ohio-4765, 2006 WL 2627448, at *4 (Ct. App. 2006). Ohio and Sixth Circuit Courts have expressly held that "***nothing*** *requires that an arbitration agreement be **explained** orally to a party prior to obtaining the party's signature*." *Madhat*, 2020 U.S.Dist.LEXIS 161272 at *10-11, citing, *Corl v. Thomas & King*, no.05AP-1128, 2006-Ohio-2956, 2006 WL 1629740, at *4 (Ct. App. 2006). Plaintiff did not ask Dillard's to read or explain the Agreement to her, and Dillard's had no legal obligation to do so.[7]

This is consistent with the similarly well-established rule that "one who accepts a written contract is conclusively presumed to know its contents and assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." *Orcutt v. Kettering Radiologists*, 199 F.Supp.2d 746, 751 (S.D. Ohio 2002), citing, *Haskins v. Prudential Ins.*, 230 F.3d 231 (6th Cir. 2000). Courts in the Sixth Circuit routinely apply the "cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has an opportunity to read and understand, is bound by its provisions." *Gemma Power Systems,* 2018 U.S.Dist.LEXIS 194987, *9, citing *Allied Steel & Conveyors v. Ford Motor Co.,* 277 F.2d 907, 913 (6th Cir. 1960). Plaintiff's Opposition contains no contention of fraud, misrepresentation, or deceit that would justify any exception to this general rule. Instead, the Sixth Circuit has advised that "[i]n the absence of evidence that assent to the arbitration agreement was procured though *unfair means* … courts should enforce mandatory arbitration agreements on the same basis as any other agreement that employers require as a condition of employment." *Seawright,* 507 F.3d at 979.

---

[7] Instead, Ohio courts reason that "[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he ... did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." *Estate of Brewer v. Dowell & Jones*, no.80563, 2002-Ohio-3440, 2002 WL 1454069, at *2 (Ct. App. 2002).

> *4. Plaintiff has not Alleged or Demonstrated any Coercion, Fraud, Misrepresentation, or Wrongful Act of Any Kind*

Indeed, there is no evidence before the Court that Plaintiff was in any way coerced, compelled, or forced to sign the Agreement at all. Courts in the Sixth Circuit have repeatedly held "in the context of employment contracts … when a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable." *Madhat,* 2020 U.S.Dist.LEXIS 161272 at *15 ("Madhat was free to walk away from the contract if he did not like the terms proposed by [the defendant-employer]"); *Seawright,* 507 F.3d at 976 (The arbitration agreement was not a contract of adhesion because the employee presented no evidence that she would be unable to find other suitable employment if she had refused to be a party to the agreement); *Cooper v. MRM Invest.*, 367 F.3d 493, 502 (6th Cir. 2004) (The arbitration agreement was not a contract of adhesion because the employee failed to present evidence that she would be unable to find suitable employment if she refused to sign the agreement).

Plaintiff does not even allege any misrepresentation, falsification, or fraud. For example, she does not contend that Dillard's misrepresented or was untruthful about the substance of the Agreement to Arbitrate, its implications, or legal consequences. Plaintiff's Opposition repeatedly contends that Dillard's "tricked or took advantage of" Plaintiff, or somehow "manipulated" her into signing this routine and straightforward Agreement. However, aside from these conclusory self-serving statements, she provides no details whatsoever, let alone any evidentiary materials, to demonstrate that she was misinformed, misled, or manipulated in any way. Notably, Plaintiff's own *sworn Affidavit fails* to aver that she was tricked or deceived at all. She simply alleges she did not appreciate the significance of the document and no one explained it to her. Pl.Aff. Doc.#12-1, ¶¶9-12. Even assuming those details are true, they do not render the Agreement unconscionable.

Instead, the evidence on record demonstrates that Plaintiff simply signed this Agreement to Arbitrate, both by hand and electronically, in the routine course of her hire in 2018, and she now contends to be uninformed and practically illiterate in the hope the Court will excuse her compliance with that Agreement. Plaintiff's Opposition utterly fails to demonstrate any procedural unconscionability.

### B. Plaintiff has Failed to Demonstrate the Agreement to Arbitrate is Substantively Unconscionable

Substantive unconscionability addresses the specific *terms* of the agreement itself without any consideration of the individual contracting parties. *Madhat*, 2020 U.S.Dist.LEXIS 161272, at *17. The focus for this analysis is whether the contract terms are commercially reasonable in the context of the transaction involved. *Id*. Plaintiff attempts a number of arguments to suggest that the Agreement is substantively unconscionable, but all are ultimately unavailing.

#### 1. *The Agreement to Arbitrate is Commercially Reasonable*

As noted above, courts throughout the Sixth Circuit have widely recognized the legitimate and lawful nature of agreements to arbitrate employment claims. See, e.g., *Jones,* 16 F.Supp.3d at 938. Those Courts likewise recognize that employment-related statutory claims may validly be subject to arbitration agreements under the FAA. *Jones,* 16 F.Supp.3d at 943 (The Sixth Circuit has expressly held that Congress did not intend to exclude Title VII claims from arbitration); *Orcutt,* 199 F.Supp.2d at 753-54 (The Supreme Court has repeatedly recognized that federal statutory claims can appropriately be resolved through arbitration and it has enforced agreements to arbitrate such claims), citing, *Green Tree Fin. v. Randolph*, 531 U.S. 79 (2000). Accordingly, the Agreement at issue is commercially reasonable in the context of at-will employment.

> 2. *The Minimal Arbitration Expense Does Not Render the Agreement Substantively Unconscionable*

Plaintiff's Opposition complains that the Agreement to Arbitrate requires her to pay a $200 fee to initiate the arbitration and "makes no provision for addressing small claims such as those for wrongly withheld pay, claims that could be litigated in small claims courts, where filing fees are commensurate with the size of the amount in controversy." Pl.Opp. 6.

On occasion courts have invalidated arbitration agreements where the costs of arbitration are "prohibitively high." *Cooper,* 367 F.3d. at 496. However, "Ohio courts have consistently recognized that given the strong public policy in favor of arbitration, a court shall not deem an arbitration clause unconscionable" even where "it imposes *higher* fees than filing a complaint in the trial court." *Madhat*, 2020 U.S.Dist.LEXIS 161272, at *19-20 (emphasis added), citing, *Sikes*, 2004 WL 67224, at *4. To render an arbitration agreement substantively unconscionable, "the increased costs of arbitration over litigation must be so high as to make access to the forum impracticable." *Madhat*, 2020 U.S.Dist.LEXIS 161272, at *20, citing, *Am. Express v. Italian Color*, 570 U.S. 228, 236 (2013).

Plaintiff's argument is patently backward. In the instant case, she has already expended *more on litigation* than she would have in arbitration. Plaintiff's argument ignores that she chose to file her claim in this federal Court, rather than in any small claims court, and she paid a filing fee of $402 – just over *twice* the amount that would have been required to properly initiate arbitration under the Agreement. Dorsey Aff. Tab 1 Doc.#9 PID 79. Notably, the Agreement also provides for Dillard's to reimburse Plaintiff's $200 arbitration fee in the event the arbitrator finds in her favor. Dorsey Aff. Tab 1 Doc.#9 PID 83.

>    *3. The Mutual Waiver of a Jury Trial Does Not Render the Agreement Substantively Unconscionable*

Plaintiff also repeatedly contends that the Agreement is substantively unconscionable because it forfeits her right to a jury trial. Sixth Circuit courts have soundly rejected this argument as unpersuasive, instead acknowledging "[i]ndeed, that is the purpose of an arbitration agreement." *Madhat*, 2020 U.S.Dist.LEXIS 161272, at *17. The waiver of a jury does not therefore render an arbitration agreement unconscionable. *Id*.

Courts recognize that arbitration agreements simply determine the *forum* in which claims will be resolved, rather than modify the substance of the claims themselves. "Congress has asserted a national policy favoring arbitration and the Supreme Court has found that 'by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.'" *Seawright,* 507 F.3d at 979, citing, *Gilmer*, 500 U.S. at 26.

Consistent with this principle, the Agreement to Arbitrate does not limit in any way the *claims* Plaintiff can pursue or the *remedies* that are available to her; it simply designates an agreed *arbitral forum* for the resolution of those claims. The Agreement expressly provides that:

> The arbitrator will apply the state or federal substantive law which would be applied by a United States District Court sitting where the events giving rise to the claim took place. …The arbitrator does not have the authority to enlarge upon or add to, subtract from or disregard, or otherwise alter your or the Company's rights under such laws. Consistent with applicable law the arbitrator shall have the authority to award any remedy or relief after a violation is found that the United States District Court referenced above could provide.

Dorsey Aff. Tab 1, Doc.#9 PID 83.

Indeed, the Agreement provides that the "arbitrator has the same authority as a judge to award you reasonable attorney fees and other costs." Dorsey Aff. Tab 1, Doc.#9 PID 83.

12

Accordingly, despite the absence of a jury, Plaintiff still retains the opportunity to obtain any relief, remedy, or type of damages that she could otherwise recover if her claims proceeded in this Court.

Plaintiff similarly complains that under the Agreement, she faces potential liability for Dillard's attorney's fees if her claims fail. However, as demonstrated by the Rules of Arbitration cited above, the arbitrator is bound to apply the same substantive law as would ordinarily apply in this Court. So the possible risk of an adverse award of attorneys' fees is no different in the arbitration forum than if she were to continue these proceedings in this Court.

### 4. *Plaintiff's Contentions of Unclean Hands are Likewise Unsupported and Unavailing*

Plaintiff lastly contends that the Agreement is unconscionable because Dillard's has "unclean hands" or has violated some unspecified duty of good faith. Pl.Opp. 7. Plaintiff does not specify what duty Dillard's allegedly violated, let alone provide any precise detail as to how it did so. Plaintiff seems to contend that Dillard's somehow breached the Agreement by terminating her employment and providing the information regarding her questionable sales transactions to the Hamilton County Sheriff's Department. Pl.Opp. 7.

Plaintiff's arguments in this regard fundamentally mischaracterize the nature of the Agreement to Arbitrate. By is terms, the Agreement simply provides an agreed forum for Plaintiff and Dillard's to resolve any disputes over "Legal Claims," which are defined as "claim[s] which would be recognized by a court of competent jurisdiction as stating a claim which would be remediable under existing law in that jurisdiction." Dorsey Aff. Tab 1, Doc.#9 PID 84.

The Rules of Arbitration expressly provide that nothing therein changes or in any way modifies the parties' employment-at-will relationship. Dorsey Aff. Tab 1, Doc.#9 PID 83. Accordingly, nothing in the Agreement or the Rules obligates Dillard's to seek the blessing of an arbitrator before taking routine personnel actions, including disciplinary action and termination.

Similarly, nothing in the Agreement or Rules of Arbitration prevents Dillard's from reporting suspected criminal activity to the appropriate law enforcement authorities.[8] Far from constituting "bad faith" or "unclean hands" as Plaintiff contends, under Ohio law statements made to report the actual or possible commission of a crime are entitled to an *absolute privilege* against civil liability. *Haller v. Borror*, no.95APE01-16, 1995 Ohio App.LEXIS 3312, *4-5, citing, *DiCorpo v. Sweeney* (1994), 69 Ohio St.3d 497, 634 N.E.2d 203, syl.¶1.

Regardless of any duty or privilege that might attach to Dillard's report to the authorities, the current criminal charges against Plaintiff do not constitute a "Legal Claim" by Dillard's, for a remedy, against Plaintiff, within the Rules of Arbitration definition. Those charges involve the enforcement of a criminal statute by the State of Ohio through the Hamilton County Prosecutor's Office, and the authority to bring and prosecute those charges has at all times rested with the Prosecutor's Office, not Dillard's.

Plaintiff's citation to the *Reid v. Wallaby's* case is particularly disingenuous. Pl.Opp. 7. That case reasoned that "whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy." *Reid*, no.2011-CA-36, 2012-Ohio-1437, 2012 Ohio App. LEXIS 1234, ¶31. *Reid* also holds that "[t]his doctrine does *not* apply, however, where a party is *not* attempting to invoke the *equitable* powers of the court." *Id*. At the risk of stating the obvious, it was Plaintiff who initiated the instant judicial proceedings. Dillard's did not invoke the equitable powers of this Court; to the contrary, its Motion expressly seeks referral to an alternate forum.

---

[8] Indeed, pursuant to R.C.§2921.22(A) which states that "no person, knowing that a felony has been or is being committed, shall knowingly fail to report such information to law enforcement authorities," Dillard's arguably had a legal duty to report Plaintiff's suspicious sales transactions.

14

Strangely, despite the fact that she refused to initiate arbitration proceedings and instead filed the instant civil suit, Plaintiff nevertheless complains that Dillard's somehow denied her ability to raise her claims through the Internal Review process by terminating her employment and her access to Dillard's intranet – essentially arguing that Dillard's blocked her access to the very process she now seeks to avoid.

The Arbitration Rules do provide employees with the option to raise a dispute over a Legal Claim through an Internal Review process. That Internal Review process is voluntary, and if the employee so chooses, they may forgo the Internal Review altogether and proceed directly to arbitration. Dorsey Aff. Tab 1, Doc.#9 PID 79. Notably, nowhere do those Rules indicate that the Internal Review process can be initiated *exclusively* through Dillard's intranet system as Plaintiff contends. Tellingly, she provides no evidence to suggest she actually pursued any Internal Review of her claims, or that Dillard's denied or ignored any such attempt. Accordingly, there is no evidence to suggest that Plaintiff was denied the ability to initiate such an Internal Review if she had chosen to do so, or that she was in any other way denied access to that process.

None of Plaintiff's contentions demonstrate any substantive unconscionability that would invalidate the Agreement to Arbitrate or excuse Plaintiff's compliance with its lawful provisions.

### III.  CONCLUSION

For all the foregoing reasons, the legal claims asserted in Plaintiff's Complaint are subject to the valid and binding Agreement to Arbitrate. Dillard's accordingly moves the Court to enter the previously proposed Order Compelling Arbitration of all Plaintiff's claims and dismissing this civil action in its entirety, without prejudice to refiling for supplemental proceedings, if necessary, following the completion of the arbitration process. In the alternative, Dillard's moves the Court

to compel arbitration of all Plaintiff's claims, and to stay these proceedings pending the conclusion of that arbitration.

Respectfully Submitted,

*/s/ Chad E. Willits*
Chad E. Willits (0066541)
REMINGER CO., LPA
525 Vine Street, Ste. 1500
Cincinnati, OH 45202
Phone: (513) 721-1311; Fax: (513) 721-2553
Email: Cwillits@reminger.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed this 3rd day of December, 2021, using the Court's CM/ECF electronic filing system which will send notice to all counsel of record, including the following:

Jason R. Phillabaum
Yonas & Phillabaum LLC
810 Sycamore Street, 2nd Floor
Cincinnati, OH 45202
Email: Jason@Phillabaum.org
*Counsel for Plaintiff*

*/s/ Chad E. Willits*
Chad E. Willits (0066541)
