UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARIA BIRO, | : | Case No. 1:21-cv-483 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| DILLARD'S, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND
STAYING THE CASE PENDING ARBITRATION (Doc. 8)**

This civil case is before the Court on Defendants' motion to compel arbitration and dismiss, or alternatively stay, the action pending arbitration (Doc. 8), and the parties' responsive memoranda. (Docs. 12, 14).

### I.  BACKGROUND

The following factual background is as alleged by Plaintiff Maria Biro in her complaint. (Doc. 10).  Born in Hungary, Biro became a naturalized U.S. citizen in 2015. (*Id*. at ¶9).  In 2018, she started working for Defendant Dillard's ("Dillard's"), a clothing retailer, in Kenwood, Ohio, as a sales associate. (*Id.* at ¶¶ 11, 19).[1]  In November 2020, Biro's manager accused her of wrongly processing a return—essentially, of stealing the value of the returned item. (*Id.* at ¶¶47-60).  Biro asserts that her manager did not listen to

---

[1] Officially, there are two Defendants: Dillard's and Higbee West Main, LP doing business as Dillard's. (*See* Doc. 1).  For all purposes, the parties treat the two Defendants as a singular entity called "Dillard's." This Court will do the same.

her legitimate explanation of the event. (*Id.* at ¶51).  In fact, according to Biro, "[b]ecause [she] was foreign-born, and because she was harder to understand due to English not being her first language, [her supervisor] assumed she was guilty and accused her without proper investigation."  (*Id.* at ¶53).

After getting a right to sue notice from the Equal Employment Opportunity Commission, Biro filed this case. (*Id.* at PageID# 23).  She alleges employment discrimination, retaliation, defamation, malicious prosecution, negligence, failure to pay final wages, and other causes of action. (*Id.* at PageID##13-18).  Dillard's has now moved for dismissal or a stay, arguing an arbitrator should decide the claims. (Doc. 8).

Biro does not dispute that she signed an arbitration agreement ("the Agreement"). (Docs. 12, 12-1).  Rather, she claims that the Agreement is unconscionable and that she has put the making of the contract "in issue." (Doc. 12).

## II.  STANDARD OF REVIEW

### A.    Motion to Compel Arbitration

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce…'shall be valid, irrevocable and enforceable'" save any reason in law or equity to the contrary.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2).  Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state

2

substantive or procedural polices to the contrary"). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.*

The FAA generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). When considering a motion to compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (6th Cir. 2000) (internal citations omitted). However, on the second task, the Court also may need to resolve who, the Court or an arbitrator, is responsible for determining whether the scope of the agreement "covers a particular controversy," or, in other words, which of those two is responsible for determining "arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 529 (2019).

**B.     Motion to Dismiss**

The proper vehicle when requesting dismissal of a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6). "A party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party has failed to state a claim upon which relief can be granted." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F.

3

Supp. 3d 1257, 1262 (S.D. Ohio 2020) (quoting *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018)).

In reviewing a Rule 12(b)(6) motion, a court ordinarily would examine the complaint to determine whether it contained "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014). Here, however, the sufficiency of the allegations in the complaint is not in dispute. Rather, the motion to dismiss turns on whether the allegations in the complaint must be sent to arbitration. *See Pinnacle Design*, 490 F. Supp. 3d at 1262 (applying 12(b)(6) standard to motion to compel arbitration).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted). Thus, the Sixth Circuit has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document."

*Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).

Here, the Agreement was not attached to Biro's complaint. However, there is no dispute that the Agreement (attached to Dillard's motion) is relevant to the issue presented to the Court for review. And, although Biro argues that the Agreement does not apply in this case, she does not dispute that she signed the Agreement as part of her employment with Dillard's. Thus, it is appropriate for the Court to consider the Agreement attached to the motion to compel arbitration and dismiss, or alternatively stay, the action.

### III. ANALYSIS

**A.   The Action Must be Sent to Arbitration**

Biro does not dispute that she signed the Agreement. (Doc. 12). Nor does she seem to dispute that the claims are within the scope of the Agreement. (*Id.*). Upon a review of the Agreement, at least some of claims here—discrimination, retaliation, wrongful termination—are clearly covered. (Doc. 9 at PageID# 77). However, Biro argues that she cannot be compelled to arbitrate under the Agreement for two reasons: (1) the Agreement is unconscionable; and (2) the "making" of the Agreement is "in issue." (Doc. 12). The Court considers each contention in turn.

*1. Unconscionability*

Biro argues that the Agreement was procedurally and substantively unconscionable. (Doc. 12 at 5). Biro bears the burden to show both procedural and substantive unconscionability—and the Court will only hold the contract unconscionable

5

if both are met. *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). Additionally, while parties may contract to delegate gateway arbitrability questions, like unconscionability, to an arbitrator, they have seemingly chosen not to do so in the present agreement. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020).  The Court thus has the power to determine unconscionability.

Regarding procedural unconscionability, the "crucial question" is "whether each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract…." *Morrison*, 317 F.3d at 666. Additionally, "[i]n determining procedural unconscionability, Ohio courts look to 'factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible.'" *Id.* (quoting *Cross v. Carnes*, 132 Ohio App.3d 157, 724 N.E.2d 828, 837 (1998)).

To start, Biro's proffered evidence does not suggest she lacked an opportunity to understand the contract. Biro asserts she does not read English well, that she was told where to sign on the Agreement, no one explained it to her, and that she did not know what arbitration was until this lawsuit. (*See* Affidavit of Maria Biro, Doc. 12-1).  None of these statements about Biro's position negate "an opportunity" to understand. Conspicuously, Biro does not allege that she asked for, and was denied, time to review the contract. *See Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 46, 117 Ohio St. 3d 352, 362, 884 N.E.2d 12, 23 ("there is no evidence that the [Plaintiffs] were

6

hurried through [the] signature process."). She also provides no evidence that she raised the issue of her limited ability to read in English with Dillard's before she signed the agreement.[2] In these ways, Biro's evidence falls short of demonstrating a lack of opportunity to understand what she signed.

At most, Biro's affidavit provides evidence of unequal bargaining power. (Doc. 12-1). Alas, "[m]ere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement." *Vanyo v. Clear Channel Worldwide*, 2004-Ohio-1793, ¶ 19. Furthermore, Biro fails to provide evidence about how her age, education or business acumen rendered her unfit to understand the contract she signed. For these reasons, the contract-signing process was not procedurally unconscionable.

Neither can Biro establish substantive unconscionability. "Substantive unconscionability pertains to the contract itself, without any consideration of the individual contracting parties, and requires a determination of whether the contract terms are commercially reasonable in the context of the transaction involved." *Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 2018-Ohio-1748, ¶ 25 (cleaned up).

Biro does not even assert that the contract is commercially unreasonable. Instead, her arguments on this point address the "convoluted process" of arbitration and the arbitration fees. (Doc. 12 at 6-7). These are not winning arguments. The arbitrator

---

[2] Applying gloss to her affidavit, Biro's counsel argues that her lack of English proficiency is apparent from speaking to her. (Doc. 12 at 5-6). But it would be obviously troublesome for an employer to assume a deficiency in reading printed English from the fact of an accent. The Court thus finds this argument unpersuasive.

selection process starts with a list of seven arbitrators provided by the American Arbitration Association ("AAA") and asks the parties to agree to one. (Doc. 9 at PageID# 80). If they cannot do so, each party exercises strikes against the list of seven. (*Id.*). There is also a procedure for each side if they were to find the list completely unacceptable. (*Id.*). This strikes the Court as more comprehensive than convoluted. Moreover, on paper at least, the process is neither one-sided nor unfair.

The costs, furthermore, are not unreasonable. According to the Agreement, Biro would have to pay $200.00 to the AAA as her share of the arbitration fees. (*Id.* at PageID# 78). Were she to win at arbitration, Dillard's would reimburse her. (*Id.* at PageID #83). Biro's affidavit says nothing about the burden of this expense. (*See* Doc. 12-1). As was the case with the plaintiff in *Taylor v. Benfield*, here there is "no evidence that the arbitration costs and fees are prohibitive, unreasonable, and unfair" as applied to Biro. 2008-Ohio-938, ¶ 12. For these reasons, there is no basis to conclude the Agreement is substantively unconscionable.

In an argument with an unclear relationship to unconscionability, Biro claims Dillard's has "unclean hands." (Doc. 12 at PageID# 97). Here Biro relies on the Agreement's provision stating that an internal review process may precede any submission to arbitration. Biro apparently argues Dillard's has not conducted an internal review, and thus, cannot ship this dispute off to arbitration—or else that Dillard's prematurely terminated Biro so cannot seek the remedy of arbitration whatsoever.

Either way, it is a confusing and unpersuasive attempt to turn the tables. First, by its own terms, the internal review process is not mandatory. (*See* Doc. 9 at PageID# 79)

8

("If you have a dispute over a Legal Claim with the Company you may, but do not have to, begin the dispute resolution process by requesting Internal Review."). Second, Biro brought this case to court, thus skipping over both the internal review and arbitration by her own act. Having done that, she is in no position to claim that Dillard's must hold an internal review. Third, Biro seems to assert that Dillard's should have conducted an internal review before terminating her, but there is no indication that a decision to terminate an employee is necessarily subject to the Agreement. Rather, the Agreement speaks to the arbitrability of "legal claims" between the employee and Dillard's. (Doc. 9). Dillard's has no apparent legal claim against Biro, so it is not clear why Dillard's would need to submit anything to an internal review or to arbitration before terminating Biro. For these reasons, Biro fails to demonstrate unclean hands.

### 2. *The "Making" of the Agreement*

Biro argues that "the making of the agreement is clearly at issue in this case," so the case should proceed to an evidentiary hearing. (Doc. 12 at 8). Biro continues: "Plaintiff's testimony at a hearing on this matter will show that there was no meeting of the minds when she was manipulated into signing and 'agreeing' to Defendant's terms." (*Id.*).

According to the Sixth Circuit, "[t]he question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact.'" *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021) (quoting Fed. R. Civ. P. 56(c)). Biro has simply failed to do this, so no hearing is warranted.

9

Dillard's has presented evidence of a valid arbitration, signed by Biro. (Doc. 9). To rebut this evidence, Biro must present evidence demonstrating "specific facts, as opposed to general allegations," that would allow a rational trier of fact to find there was no agreement to arbitrate. *Boykin*, 3 F.4th at 839 (6th Cir. 2021) (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)). Biro does not deny she signed the contract. She alleges nothing to suggest she was "manipulated" into signing it. Even viewing the evidence in the light most favorable to Biro, the Court determines Biro has failed to show specific facts that create a genuine dispute as to the making of the Agreement. This argument, therefore, is not well-taken.

### B. The Case is Stayed

Dillard's requests that this Court dismiss this action, or alternatively stay this action, pending arbitration. (Doc. 8). Biro only opposes Dillard's request to compel arbitration and does not discuss whether the action should be dismissed or stayed if she were compelled to arbitrate. (Doc. 12).

To reiterate, the FAA establishes procedures for parties to enforce arbitration agreements in federal court. 9 U.S.C. §§ 3–4. Section 3 provides that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "<u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id.* (emphasis added); *see, e.g., Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 379 (6th Cir. 2021).

When construing this section, some circuits adhere to this mandatory language that a court cannot dismiss and must stay the action pending arbitration. *Anderson*, 860 F. App'x at 380 (citing cases from the Second, Third, Tenth, and Eleventh Circuits). However, despite the FAA's mandatory language, several circuits have created an exception that allow a district court to dismiss the action (instead of staying the action) if it is clear the entire controversy will be resolved by arbitration. *Id*. (citing cases from the First, Fifth, Eighth, and Ninth Circuits). Although the Sixth Circuit has "followed the latter approach in unpublished decisions," the Sixth Circuit has not yet issued binding precedent on whether the district court may dismiss a case, or must only stay the case, once compelling arbitration. *Id*.

The Court finds a stay is the most prudent approach. The FAA language dictating a stay pending arbitration is mandatory. 9 U.S.C. § 3. The judicially-created exception, if it applies in the Sixth Circuit, is a matter of discretion. *See e,g.*, *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). Here, the Court finds good reason to adhere to the language of the FAA and to decline to exercise any discretion it may have to dismiss the case. Two considerations compel that conclusion. First, the Court is persuaded by the decisions that have found an outright dismissal could upend the structure of FAA vis-à-vis appeals. *See e.g., Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d

11

Cir. 2015).³ Second, dismissal is only appropriate, if it is all, where it is "clear that the arbitrator would resolve all claims." *Anderson*, 860 F. App'x 374, 380 (6th Cir. 2021). The Court has very little argument in either direction on this point. On its own, the Court notes the complaint asserts a range of claims from retaliation to malicious prosecution. If malicious prosecution is within the scope of the arbitration agreement, the arbitrator may duly resolve the issue. But it is premature for this Court to conclude that an arbitrator would absolutely resolve all claims alleged. For these reasons, the Court will stay the case rather than dismiss it.

## IV. CONCLUSION

Based upon the foregoing:

1. Defendants' motion to compel arbitration (Doc. 8) is **GRANTED**;

2. The Court **COMPELS** the matter to arbitration; and

3. This action is **STAYED** pending arbitration. The parties **SHALL** notify the Court within 14 days upon the conclusion of arbitration.

**IT IS SO ORDERED.**

Date:   5/9/2022                                             *s/Timothy S. Black*
                                                            Timothy S. Black
                                                            United States District Judge

---

³ According to the circuit court in *Katz*:

> [T]he FAA explicitly denies the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings…. The dismissal of an arbitrable matter that properly should have been stayed effectively converts an otherwise-unappealable interlocutory stay order into an appealable final dismissal order. Affording judges such discretion would empower them to confer appellate rights expressly proscribed by Congress.

794 F.3d 341, 346 (2d Cir. 2015)